IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JULES E. WONG | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANDREW SAUL[1] | : | NO. 17-7470 |

O P I N I O N

JACOB P. HART                                                           DATE: July 15, 2019
UNITED STATES MAGISTRATE JUDGE

Jules E. Wong brought this action under 42 USC §405(g) to obtain review of the decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB"). He has filed a Request for Review to which the Commissioner has responded. As set forth below, I will deny Wong's Request for Review, and grant judgment in favor of the Commissioner.

I.      Factual and Procedural Background

Wong was born on August 29, 1959. Record at 147. He completed college. Record at 164. Wong has worked in the past as a chemist. Id. On February 24, 2014, Wong filed an application for DIB. Record at 147. In it, he alleged disability since June 1, 2012, as a result of depression. Record at 147, 163.

Wong's application for benefits was denied initially and upon reconsideration. Record at 68, 79. He then requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Record at 104. A hearing was held in this matter on November 9, 2016. Record at 27. On December 22, 2016, however, the ALJ issued a written decision denying benefits. Record at 13.

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d); and see 42 U.S.C. §405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security … .").

The Appeals Council denied Wong's request for review on July 13, 2017, permitting the ALJ's decision to stand as the final decision of the Commissioner. Record at 1. Wong then filed this action.

II. Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence viewed objectively as adequate to support a decision. Richardson v. Perales, supra, at 401; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979). Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv). At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v). At the fifth and last step, we consider our assessment of your residual functional capacity

and your age, education and work experience to see if you can make an adjustment to other work.  If you can make an adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

20 CFR §404.1520 (references to other regulations omitted).

III.   The ALJ's Decision and Wong's Request for Review

In her Decision, the ALJ determined that Wong suffered from the severe impairment of an affective disorder.  Record at 15.  She found, however, that Wong's impairment did not meet or medically equal Listing 12.04.  Record at 15-17.

The ALJ determined that Wong retained the residual functional capacity ("RFC") to engage in the full range of work at all exertional levels, but with the following limitations:

> The claimant can understand and execute simple, routine and repetitive tasks when production is measured no earlier than the end of the workday.  The claimant can frequently respond appropriately to supervisor's instructions; have occasional contact with coworkers and supervisors; and incidental contact with the public, but not with tasks that involve direct customer service.  The claimant can work around others, but not on tasks requiring teamwork or working in tandem.  The claimant can make simple decisions and adapt to occasional changes in essential work tasks and would be absent 1 day per month on a regular and recurring basis.  The claimant will be off task 10% of the workday due to his impairments.

Record at 17.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ determined that, although Wong could not return to his prior work, he could work as an office cleaner, hand packager, or mail clerk.  Record at 21.  She therefore determined that he was not disabled.  Id.

In his Request for Review, Wong argues that the ALJ (1) failed to accord adequate weight to the opinion of his treating psychiatrist, Ramakrishna Gudapati, M.D.; (2) mischaracterized certain medical evidence; (3) wrongly discounted the opinions of non-medical sources, specifically his therapist and his wife; (4) identified jobs that were not suitable for an

3

individual limited to "simple, repetitive tasks", and (5) included in her RFC assessment a limitation which was never included in her hypothetical questions to the vocational expert.

IV.     Discussion

A.      Dr. Gudapati

Dr. Gudapati, Wong's treating psychiatrist, submitted a letter dated October 19, 2016, which states, in its entirety:

> Please be advised that the above referenced individual has been in outpatient mental health treatment with the undersigned here at Vantage Health System for the past six years. He has a diagnosis of Major Depressive Disorder, recurrent, severe, without psychosis and is currently on the following medications: Ability 10 mg daily, Lexapro 20 mg daily, and Wellbutrin xl 450 mg a.m. Mr. Wong reports having attempted gainful employment between 2009 and 2012 but was unable to keep his jobs. Due to his depression worsening, Wellbutrin xl was added in December 2013 and Abilify in November 2015. In my opinion, Mr. Wong's mental health symptoms prevent him from working and it is highly unlikely that he will be able to engage in any type of gainful employment for at least the next 12 months.

Record at 330.

The record also contains a form Dr. Gudapati completed for the State of New Jersey on March 13, 2014, certifying that Wong was not able to engage in the WFNJ work requirement for twelve months. Record at 186. In this check-off form, he attributed Wong's disability to major depressive disorder with an onset date of "a few years ago", but with no hospitalizations. Id.

The ALJ assigned Dr. Gudapati's reports little weight, writing that they were conclusory and not supported by his treatment notes. Record at 18. She added that a statement by a doctor that a claimant was "unable to work" was an opinion on an issue reserved the Commissioner of Social Security and, as such, not entitled to special significance. Id., citing 20 CFR §404.1527(d); and SSR 96-5p.

4

Wong maintains that the ALJ erred in finding that Dr. Gudapati's treatment notes did not support his opinion that Wong was disabled by his depression. He points out that the notes show "the presence of severe depression with low motivation despite psychotherapy and compliance with taking prescribed medications." Wong's Brief at 12.

The record contains monthly treatment notes from Dr. Gudapati from October 14, 2010, through January 11, 2016. Record at 242-249, 251, 253, 292-329. Dr. Gudapati often described Wong's affect as sad, and occasionally as worried or depressed. Record at 243-9, 251, 253, 297, 309, 310, 311, 313, 315, 316, 317, 318, 319, 320, 321-329. On many other visits scattered through the six years, however, Wong's mood was said to be euthymic, with no anxiety or depression. Record at 242, 293, 294, 295, 296, 298, 299, 300, 301, 302-8, 311, 314. Wong never presented with mania or psychosis. Id. He always denied suicidal and homicidal impulses, and denied audio/visual hallucination. Id. Invariably, his speech was calm. Id.

Thus, although Dr. Gudapati's notes do evidence the severe depression from which the ALJ found Wong to suffer, they do not strongly support a finding that he was incapable of any work. Instead, a June 30, 2014, note simply reported: "States he is unable to work." Record at 246.

Wong also argues that the report of the consulting examiner, Charles Hasson, Ph.D., supports Dr. Gudapati's opinions that he is disabled. Indeed, Dr. Hasson reported that Wong's functioning was below average in certain tests of "mentation," apparently involving memory and concentration, such as remembering items after five minutes, or spelling or counting backwards. Record at 240. Further, Dr. Hasson wrote that Wong's affect was constricted and sad, and he described his mood as "down." Id.

Nevertheless, Dr. Hasson also reported that Wong did not have suicidal or homicidal thoughts, and that he had never experienced a hallucination. Id. His thought content was not delusional. Record at 240-1. He was cooperative and alert, with goal-directed speech and linear, logical thought. Record at 240. Dr. Hasson diagnosed Wong with a dysthymic disorder, which he described as chronic depression. Record at 241. He also indicated that if Wong were to obtain benefits, he would be able to manage his own funds. Id.

The state agency mental health experts who considered Wong's case in his initial application and upon reconsideration, Pamela Foley, Ph.D., and Leslie Williams, Ph.D., both indicated that they gave Dr. Hasson's report "great weight." Record at 74, 85. Dr. Foley concluded that, although Wong was limited in his understanding and memory, he was "able to understand and follow simple instructions, to sustain pace, persistence, concentration and attention to simple repetitive tasks for at least two-hour segments during a normal workday, and to adequately relate and adapt in simple work-like settings." Record at 76. Dr. Williams agreed with Dr. Foley. Record at 87.

The ALJ gave "significant weight" to the opinions of Drs. Hasson, Foley, and Williams. Record at 19. The substantial evidence cited by the ALJ therefore adequately supports her decision to give little weight to Dr. Gudapati's opinions regarding Wong's disability.

It should also be mentioned that, although Wong writes in his Request for Review of his "his admission to Bergen Regional Hospital for [a] suicidal gesture" in 2010, there was no such admission. Wong's Brief at 3. Wong appeared at the emergency room of the Bergen Regional Medical Center on May 13, 2010, and reported having suicidal ideation "8 months ago with no plan." Record at 255. He was discharged on the same day. Record at 261. The discharge note

states: "Patient isn't suicidal, homicidal, not danger to self or other. No [illegible], psychotic symptoms reported. Patient's wife comfortable taking him home." Id.

While at the Bergen Regional Medical Center, Wong was diagnosed with depression, and noted to have occupational and economic problems. Record at 260. He was found to have no hallucinations, delusions, obsessions, phobias or "themes." Record at 258. He had no history of inpatient hospitalizations. Record at 255.

Nor did the ALJ ignore Wong's cognitive limitations. She found Wong to be moderately impaired in concentration, persistence and pace. Record at 16. She accommodated this by limiting Wong to "simple, routine and repetitive tasks when production is measured no earlier than the end of the workday," which required him to make only simple decisions and adapt to only occasional changes in his work tasks. Record at 17.

B.   "Mischaracterization" of the Medical Evidence

Wong alleges that the ALJ mischaracterized the medical evidence when she wrote that "In 2014, the claimant reported he noticed improvement in his mood due to his medications and indicated he was tolerating his medicine well without side effects." Record at 18. According to Wong, the ALJ cited "Exhibit 1F, p. 3-4", which is "a psychiatric evaluation of Dr. Gudapati from September 23, 2010." Wong's Brief at 13; Record at 235-6.

In fact, the ALJ cited "Exhibit**s** 1F, p. 3-4; 4F." (Emphasis supplied). The first page of Exhibit 4F is a treatment note from Dr. Gudapati dated January 13, 2014, stating: "Pt presents for f/u [follow up]. States he noticed improvement in his mood with the addition of Wellbutrin XL. Compliant with Lexapro per Patient tolerating meds well w/o side effects." Record at 242. Further, the third and fourth pages of Exhibit 1F are not a 2010 psychiatric evaluation, but a

medication list which shows that Wong began taking Wellbutrin in December, 2013.  Record at 235.  Therefore, the ALJ's citation was accurate and Wong's was mistaken in several respects.

Wong also maintains that the ALJ was inaccurate in writing:  "Furthermore, the record reflects that by 2016, the claimant's mood was stable and he continued to have [a] mental status examination within normal limits."  Record at 18.  In this case, Wong was correct in noting that the ALJ's citation to Exhibit 5F, page 4, was to a therapist's note which did not mention a mental status examination, although it did report that Wong was "calmer and in a stable mood."  Record at 252.  The next page of notes, however, was a 2016 treatment note from Dr. Gudapati which stated, as to mental status:  "Speech nl [normal limits], mood sad when speaking of his father-in-law, affect appropriate, denies si/hi/avh [suicidal or homicidal ideation; audio or visual hallucinations], tp goal directed, no psychosis."  Record at 253.  Since Wong's father-in-law had terminal cancer at that time, even Wong's sadness was not abnormal.  Record at 252.

Thus, instead of identifying two instances of mischaracterized evidence, Wong has only identified one instance of an inaccurate pin cite.  This is certainly not enough to undermine the ALJ's decision.

C.      Non-Medical Sources

Wong claims that the ALJ erred in failing to either cite or follow SSR 16-3p when considering the letter report from his therapist, Merav Tritt, LCSW, and the testimony of his wife, who appeared at his hearing.  That regulation concerns, in part, the consideration of evidence from non-medical sources.  SSR 16-3p at §2, 2017 WL 5180304 at *6 (Oct. 25, 2017).  Wong claims that the ALJ wrongly relied upon the rescinded SSR 06-7p.  Plaintiff's Brief at 14.

In fact, the ALJ relied upon SSR 06-3p, which was not rescinded until some months after the ALJ issued her opinion. 2017 WL 3928297 (April 6, 2017). Nevertheless, I will consider the ALJ's treatment of the evidence from Ms. Tritt and Ms. Wong.

Ms. Tritt's letter, in its entirety, reads:

> Mr. Jules Wong has been seen at Vantage Health since September 23, 2010. He suffers from a long-term state of depression. Mr. Wong is treated for his depression with medication that is prescribed by Dr. Gudapati. The client has also been seen for individual therapy. During this time, he seems to be unable to work.

Record at 331.

The ALJ wrote: "Similar to Dr. Gudapati's opinions, the undersigned assigns Ms. Tritt's opinion little weight because it is conclusory and about an issue reserved the Commissioner." Record at 19. She continued: "Additionally, Ms. Tritt is not an acceptable medical source as defined in the regulations (SSR 06-03p; 20 CFR §404.1513(a) and (e))." Id.

I agree with Wong that noting that a therapist is "not an acceptable medical source" under 20 CFR §404.1513 is a very weak basis for disregarding evidence they provide, since the regulations clearly provide that this evidence may be considered. Evidence from a treating therapist may well be based on greater knowledge of the claimant than evidence provided by a medical doctor who sees the claimant only for brief and infrequent medicine checks.

However, as is clear from the quotation above, the fact that Ms. Tritt was not a medical doctor was not the ALJ's primary reason for giving little weight to her report. She also called it conclusory and noted that the issue of disability was one reserved to the Commissioner. In both of these respects, the ALJ was accurate. Not only was Ms. Tritt's report conclusory, but it used such lukewarm language that it could not have helped Wong much even if it had been given greater weight.

9

Emily Wong, however, the wife of the claimant, testified in very strong terms that her husband was almost entirely immobilized in the house, refusing to drive since he had a "little fender bender" three years earlier. Record at 53-54. She also had to "push him" to socialize: "So he has one friend, and I kind of force him to go see him. And his friend is very nice and is aware of him, and has a lot of patience with him." Record at 54. She put her husband's medicine in a pill tray for him. Record at 56. She also testified that she called Wong "constantly" at home, because her therapist told her she should assign him specific tasks, and he did them imperfectly, even with reminders. Record at 58. She testified that it was her idea to bring him to Bergen Regional in 2010 because she was concerned about him, and that was when he started accessing mental health treatment. Record at 55.

Ms. Wong also testified that her husband did not take their children anywhere, and that he slept constantly: "He'll say he's not, but I know he is. … When I call and he answers the phone, I can hear it in his voice." Record at 58-9. He does not go to the movies with his family, because "to him, it's mindless and boring." Record at 59.

Wong maintains that the ALJ did not mention his wife's testimony. This is inaccurate. In fact, the ALJ acknowledged that "The claimant and his wife testified that the claimant has a lack of interest in activities and an inability to concentrate or perform activities of daily living." Record at 17-18. The ALJ did not, however, specifically evaluate Ms. Wong's testimony.

The ALJ also gave a Third-Party Function Report completed by Ms. Wong "little weight" because "although she has a longstanding relationship with the claimant, she is not an acceptable medical source as defined in the regulations and her assessment of the claimant's functioning is not supported by the record as a whole." Record at 18.

Here, as always, it is unclear how a Third-Party Function Report can be rejected on the basis that it is not written by an acceptable medical source, when the very purpose of these reports is to obtain evidence from third parties. It is equally unclear why an ALJ would believe an individual needed a medical degree to describe her own spouse's daily functioning. Obviously, Ms. Wong could not diagnose her husband with a specific disorder, but she was perfectly competent to know whether he slept all day or took the children out. The Commissioner's suggestion in his Response that Ms. Wong's evidence was "cumulative" of her husband's is equally unsatisfying: its very value is in the fact that it is corroborative. In fact, Ms. Wong described her husband as more limited than he himself acknowledged.

Nevertheless, even if the ALJ erred in failing to discuss Ms. Wong's evidence in more detail, or to give it more weight, remand is not necessary because it would be very unlikely to result in a change in the outcome of the case. Rutherford v. Barnhart, 339 F.3d 546, 553 (3d Cir. 2005). Substantial evidence supported the ALJ's conclusion that Wong was not disabled.

Wong was never hospitalized or treated in a partial hospitalization program. He saw Dr. Gudapati monthly, and saw his therapist less than weekly; he testified that he saw her "at least twice a month." Record at 42. (The record contains only two treatment notes from Ms. Tritt, dated November 23, 2015, and January 13, 2016. Record at 250, 252). Further, although the treatment notes showed that Wong was involved in some tangled family situations (see, e.g. Record at 247, 248) he was always noted by mental health professionals such as Dr. Gudapati and Dr. Hasson to be cooperative and fully oriented.

The ALJ also relied upon the fact that Wong's daily activities were not as limited as would be expected given his claims regarding his symptoms and limitations. Record at 19. She wrote:

> The record reflects the claimant pursued a court case to obtain modification of alimony [paid to a previous wife] and he testified he walks his children between the school and his home during the week, uses public transportation for grocery shopping twice per month, visits his brother twice a month, and visits a friend in a neighboring city a couple times [*sic*] per week.

Record at 19.

This is an accurate description of the evidence, except that Wong actually testified that he shopped for groceries twice per week, and not twice per month. Record at 47. He testified that he visited his brother in New York "a couple of times a month." Record at 34-35. He picked up his children from school daily. Record at 37. He helped with the laundry and the garbage once or twice a week, and was able to heat food in the microwave. Record at 43, 44. He also socialized a few times per week with his friend in Hoboken. Record at 44.

Wong's testimony was largely consistent with the Function Report he completed. Record at 170-175. There, he also reported that he read every day as a hobby, and that he spoke on the phone with people daily. Record at 174.

Therefore, even if the ALJ were to consider Emily Wong's evidence fully, it is not reasonably likely that she would change her view that, to the extent that it indicated that Wong was incapable of all work, it was "not supported by the record as a whole."

D.  <u>Appropriate Jobs</u>

Wong also argues that the jobs identified by the ALJ at stage five of the sequential evaluation were inconsistent with her finding that he was limited to "simple repetitive tasks." However, two of those jobs – office cleaner and hand packages – are listed in the Dictionary of Occupational Titles ("DOT") as having reasoning levels of 2.

Relevant case law establishes that a reasoning level of 2 is consistent with RFC restrictions to simple, routine and repetitive tasks.  Money v. Barnhart, 91 Fed. Appx. 210, 215 (3d Cir. 2004); Pallo v. Commissioner of Social Security, No. CV 15-7385 (MLC), 2016 WL 7330576 at *14 (D.N.J. Dec. 16, 2016), citing Tollivers v. Astrue, CV No. 11-6358, 2013 WL 427096 at *6 (D.N.J. Feb. 1, 2013); Jones v. Astrue, 570 F. Supp.2d 708, 715-716 (E.D. Pa. 2007).  The ALJ was entitled to rely on this authority, even if Wong personally believes that the duties listed in the DOT job descriptions are too complex.

As such, it is not important that the third job identified by the ALJ, that of mail clerk, has a reasoning level of 3.  An ALJ meets her burden of identifying work that a claimant can perform when she identifies one suitable occupation.  Wright v. Sullivan, 900 F.2d 675, 679 (3d Cir. 1990), citing 20 CFR §416.966(b); Nalej v. Berryhill, No. CV 16-3079, 2017 WL 6493144, at *11 (D.N.J. Dec. 19, 2017).

E.     Limitation to One Absence Per Month

The ALJ included in her RFC assessment the specification that Wong would be absent one day per month "on a regular and recurring basis."  Record at 17.  This limitation was not included in any hypothetical question presented to the vocational expert who appeared at the hearing.

It was certainly error for the ALJ to include in her RFC a limitation for which no vocational testimony existed to confirm that it would not exclude the jobs identified.  An ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations.  Rutherford v. Barnhart, 349 F.3d 546, 554 (3d Cir. 2005).

Nevertheless, the Commissioner has come forward with several cases in this Circuit in which vocational expert testimony suggested that one absence per month does not usually preclude employment.  Brando v. Colvin, No. CV 15-3219, 2017 WL 2364194 at *11 (D.N.J. May 13 2017) ("VE Turetsky explained that 'the maximum tolerance for absenteeism is typically no more than one day per month'"); Detwiler v Colvin, Civ. A. No. 12-214, 2013 WL 5372875 at *7 (W.D. Pa. Sep. 24, 2013) ("the vocational expert went on to explain that no more than one absence per month would be acceptable to a typical employer"); Albright v. Astrue Civ. A. No. 11-1079, 2012 WL 4111585 at *3 (W.D. Pa. Aug. 29, 2012).  In one case, the vocational expert testified that in jobs including that of a hand packager – one of the occupations identified by the ALJ at stage five – one absence per month was acceptable.  Zaccone-Whitefleet v. Commissioner of Social Security, No. CV 16-1609, 2017 WL 3208349 at *8 (D.N.J. July 27, 2017).

In light of this evidence, and in the absence of any specific argument by Wong that one absence per month would exclude any of the identified occupations, I do not conclude that the ALJ's error requires remand.  I have also taken into consideration the fact that the ALJ's decision is otherwise well-supported by substantial evidence.

V.    Conclusion

In accordance with the above discussion, I conclude that the decision of the ALJ must be affirmed, and judgment entered in favor of the Commissioner.

BY THE COURT:

/s/ Jacob P. Hart

_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE